DILWORTH & GREEN v. ED STEVES & SONS et al. (No. 5303.) †

(Court of Civil Appeals of Texas. San Antonio. June 22, 1914. Rehearing Denied Oct. 7, 1914.)

1. MECHANICS' LIENS (§ 199*) — VENDOR'S LIEN—WAIVER IN FAVOR OF "MECHANICS' LIEN."

Where the holders of a vendor's lien on certain unimproved lots, in order to assist the vendee to construct improvements, executed an instrument reciting that they waived the vendor's lien in favor of the holders of a mechanic's lien so that the mechanic's lien should be superior to the vendor's lien, etc., the words "mechanic's lien" were not used in their technical sense to mean a lien for labor only, but in the broad sense of a lien given by Rev. St. 1911, arts. 5621–5639, covering both material and labor.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 371–374; Dec. Dig. § 199.*

For other definitions, see Words and Phrases, First and Second Series, Mechanics' Lien.]

2. MECHANICS' LIENS (§ 199*) — VENDOR'S LIEN — WAIVER IN FAVOR OF MECHANICS' LIEN.

Where the holders of a vendor's lien on certain unimproved property, in order to enable the vendee to improve the same, executed an instrument providing that, whereas it was desirable and beneficial to them that the improvements be made, they thereby waived their vendor's lien in favor of the holders of a mechanic's lien, such instrument was a written offer to waive the lien in favor of any person who would erect a house on the land and take as security therefor the statutory mechanic's lien, and, such offer having been accepted and the house erected, the vendors were estopped to deny the validity of the waiver on the ground that the instrument was executed by them alone

and bound no one to do anything on account of or in consideration of the waiver.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 371–374; Dec. Dig. § 199.*]

3. MECHANICS' LIENS (§ 199*) — VENDOR'S LIEN — WAIVER IN FAVOR OF MECHANICS' LIEN.

Where vendors, to enable the vendee to erect a house on unimproved property, executed a written waiver of their vendor's lien in favor of a mechanic's lien, the waiver would be construed to cover the cost of material and labor necessary to complete the building, but could not be extended to cover taxes paid by virtue of a provision of the contract nor a penalty, consisting of the payment of attorney's fees, for nonpayment of a note given for the contract price.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 371–374; Dec. Dig. § 199.*]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Action by Ed Steves & Sons and others against Dilworth & Green. Judgment for plaintiffs, and defendant appeals. Affirmed.

Joe L. Hill and Gordon Bullitt, both of San Antonio, for appellant. C. R. Edwards and Templeton, Brooks, Napier & Ogden, of San Antonio, for appellees.

MOURSUND, J. On February 10, 1910, Dilworth & Green conveyed to C. H. Skidmore lots 1 to 7, inclusive, block 10 of Dilworth & Green Terrace, city of San Antonio, a vendor's lien being expressly retained to secure the payment of a note for $3,305, executed by Skidmore to such grantors. Dilworth & Green executed the following instrument:

"State of Texas; County of Bexar.

"Whereas, on the 10th day of February, 1910, R. S. Dilworth of Gonzales county, Texas, and William Green of Lavaca county, Texas, made, executed and delivered to C. H. Skidmore, a deed to a certain tract or parcel of land lying and being situated in the city of San Antonio, Bexar county, Texas, being a part of old city lot No. 97, district No. 1, range No. 4, and further described as lots Nos. 1 to 7, in block No. 10, in Dilworth & Green Terrace as platted by Dilworth and Green, and of record in deed records of Bexar county, Texas, to which plat reference is made for description; and whereas, in said deed a vendor's lien was retained to secure the payment of the vendor's lien notes; and whereas, said C. H. Skidmore is about to enter into a contract for the erection of a residence on lots Nos. 1 and 2, in said block No. 10; and whereas, it is desirable and beneficial to us that said improvements should be erected: Now therefore, we, R. S. Dilworth and William Green, for the purpose of enabling said C. H. Skidmore to erect said house, hereby waive the vendor's lien held by us against lots Nos. 1 and 2, in favor of the holders of the mechanic's lien ———, so that the mechanic's lien shall be superior to the vendor's lien but it is expressly understood and agreed, as against the said C. H. Skidmore and every one except the holders of the said mechanic's lien that the vendor's lien shall continue to exist against the said lots, but this is only intended as a waiver in favor of the mechanic's lien aforesaid.

"In witness whereof we have hereunto signed our names this the ——— day of February, A. D. 1910.　　　　　　R. S. Dilworth.

"William Green."

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am.-Dig. Key-No. Series & Rep'r Indexes

† Writ of error pending in Supreme Court.

Such instrument was duly acknowledged before Joe L. Hill, a notary public for Bexar county, on February 16, 1910, and was filed with the county clerk of said county for record on March 3, 1910, and duly recorded. On March 4, 1910, C. H. Skidmore and his wife, Bessie, entered into a written contract with C. M. Licklider, reciting that the Skidmores were the owners of lots 1 and 2, block 10, in the Dilworth & Green Terrace, city of San Antonio, and providing that Licklider would build a house for the Skidmores upon said lots according to certain plans and specifications, and would furnish all material necessary for the completion of the house, and the Skidmores bound themselves to pay $3,500 to Licklider, executing a note payable in installments, and to secure the payment thereof granted to Licklider a "mechanic's and materialman's lien as provided by the laws of the state of Texas" upon said lots and the improvements to be erected thereon. It was further provided in said contract and in the note that if default be made in the payment of the note or interest thereon, and the same should be placed in the hands of an attorney for collection, or collected through judicial proceedings, an additional amount of 10 per cent. should be added to the same as collection fees. It was further provided that the Skidmores should pay all taxes, and upon their failure to do so, if Licklider should pay same, such amount should be immediately due him, and a lien was specifically given him for the securing of such advancements. The contract was duly acknowledged by all parties thereto and filed for record on March 5, 1910, and duly recorded. The day the contract was executed Licklider sold and transferred to Ed Steves & Sons, by written instrument, the note described in said contract, and the lien created therein, which instrument was duly acknowledged on March 4, 1910, and filed for record on April 9, 1913. Licklider built the house. On December 1, 1910, C. H. Skidmore and his wife conveyed said lots 1 and 2, block 10, to J. M. Vela, in consideration of $10 cash paid and the assumption by Vela of the payment of $944 on the vendor's lien note for $3,305 due Dilworth & Green, and the payment of the note for $3,500, payable to Licklider. Default was made in the payment of the note by the Skidmores to Licklider, and the same was by Ed Steves & Sons placed in the hands of an attorney for collection, under an agreement that he was to receive 10 per cent. on the amount due on the note as fee. Default was also made in the payment of taxes due upon said lots 1 and 2, and Ed Steves & Sons paid same, to the amount of $133.27. On July 2, 1913, Dilworth & Green obtained a judgment against C. H. Skidmore and J. M. Vela for $1,253.41 and against C. H. Skidmore for the further sum of $3,369.30, and foreclosing the vendor's lien held by them upon lots 1 to 7, inclusive, conveyed by them to Skidmore, as hereinbefore set out. Order of sale was issued, and lots 3 to 7 were sold, and purchased by Dilworth & Green, but lots 1 and 2 were not sold because of an order entered staying the sale as to said lots. On April 9, 1913, Ed Steves & Sons sued Skidmore and his wife, J. M. Vela, C. M. Licklider, Dilworth & Green, Daniel & Daniel, W. G. Daniel, and J. G. V. Redmon, seeking a recovery against the Skidmores and Vela upon the $3,500 note executed by the Skidmores to Licklider and against all the defendants for foreclosure of the mechanic's and materialman's lien given to secure the payment of said note. The case was dismissed as to Daniel & Daniel, W. G. Daniel, and C. M. Licklider. The Skidmores and Redmon failed to answer, and judgment by default was taken as against them. Vela answered by general demurrer, a special exception, and a general denial. Dilworth & Green answered, specifically denying each material paragraph of plaintiff's petition, and then pleaded their note from Skidmore, the sale to Vela, the judgment against the Skidmores and Vela, and prayed that their vendor's lien be adjudged to be superior to the lien asserted by Ed Steves & Sons. The trial before the court resulted in a judgment in favor of Ed Steves & Sons for their debt against the Skidmores and Vela and foreclosing their lien as against all defendants, but plaintiff's lien was adjudged to be superior to that of Dilworth & Green only to the extent of $3,334, the court declining to hold the same superior thereto as to the attorney's fees and taxes sued for. Dilworth & Green appealed, and by several assignments of error question the correctness of the judgment declaring plaintiff's lien superior to theirs to the extent of $3,334, while Ed Steves & Sons have filed cross-assignments of error attacking the holdings by which their claims for attorney's fees and taxes were adjudged not to be secured by a lien superior to that of Dilworth & Green. Upon the questions of law involved we conclude as follows:

[1] 1. The court did not err in holding that the waiver executed by Dilworth & Green applied to a lien for material as well as labor. When the entire instrument is considered, it is evident that the parties intended such a waiver as would permit the erection of a house, and it appears that a contract for the erection thereof was then contemplated by the parties. If Skidmore had enough money to pay for the material in a $3,500 house, it is reasonable to suppose that he could have procured a release of the vendor's lien upon lots 1 and 2 by paying such money upon the vendor's lien note for $3,305, which was secured by lien upon seven lots. If Dilworth & Green had intended a waiver only for the labor in erecting the house, such intent could have been aptly expressed in very few words. Neither of said parties took the stand to explain what was

meant by the waiver, nor does it appear that Skidmore was a witness. It is not shown who drew the instrument, though it appears that it was acknowledged before one of the attorneys for Dilworth & Green in this case. Dilworth & Green rely upon the technical definition of a mechanic's lien as distinguished from a materialman's lien, but such definition cannot control the intention of the parties as disclosed by the entire instrument. Dilworth & Green intended, as shown by the instrument, to make such a waiver as would enable Skidmore to erect the house; in other words, to subordinate their lien to such lien as was necessary to be created in order to procure the erection of the house, with the sole limitation that it should be a "mechanic's lien," and it is apparent that the words, "mechanic's lien," were not used in the narrow and restricted sense of a lien for labor, but in the broad sense of a lien under title 86, chapter 2, Rev. Stat. of 1911, covering material and labor. When courts and law writers use the term, "mechanics' lien" as a general term to designate liens of contractors, materialmen, and laborers, it is not strange that the same use would be made of it in a contract. See Lippencott v. York, 86 Tex. 276, 24 S. W. 275; Miner v. Moore, 53 Tex. 228; Bank v. Campbell, 24 Tex. Civ. App. 160, 58 S. W. 628; Bank v. Smith, 160 S. W. 312. The first and third assignments of error are overruled.

[2] 2. Appellants contend that the instrument executed by them is not binding, the objection being that it was executed by them alone; no one was bound to do anything on account of or in consideration of their waiver; it failed to name the person in whose favor their lien was waived, and was too vague and indefinite. The instrument amounted to a written offer, sufficiently definite to be fully understood, to waive their lien in favor of any person who would erect a house upon the two lots and take as security therefor the statutory lien commonly known as a "mechanics' lien," and this offer was delivered and recorded. It was prompt-

ly accepted by written instrument, promptly recorded, the house was erected, and it does not appear that they ever undertook to retract their offer. Relying in good faith upon such offer, appellees purchased the note and lien given by Skidmore and wife. Appellants, on account of such acceptance and the completion of the house, received the benefits mentioned in their waiver, and cannot now be heard to say that they will not be bound to perform what they agreed to perform in consideration of the said benefits. The objections are without merit, and the second assignment is overruled.

[3] 3. The waiver of the "mechanics' lien" was intended to cover the cost of the material and labor necessary to complete the building, but it is not provided in the waiver that the terms of the contract to be entered into have been agreed upon, nor that whatever contract may be made shall have superiority over appellant's lien, but it is expressly provided that the "mechanics' lien" is waived, and we think the waiver can only be applied to a contract for the price of material and labor, and cannot be extended so as to cover taxes paid out by virtue of a provision of the contract, nor to authorize the exaction of a penalty for default in the payment of the amounts due for material and labor. It cannot be presumed that all the details of the contract made on March 4th were known to appellants two weeks prior or thereto. If Skidmore and Licklider had agreed upon everything at that time, it is difficult to see why the contract was not made between them and described as referred to in the waiver executed by appellants. No definite contract appears to have been agreed upon at that time, so the waiver was made to apply to the "mechanics' lien" given by statute, if a contract, written or verbal, should be entered into. We think the court did not err in declining to extend the waiver to taxes and attorney's fees, and therefore overrule the cross-assignments of error.

Judgment affirmed.